. BERNHARD SMYTH *et al.*

*v.*

ANDREW HARVIE, AND MURRAY F. TULEY.

1. ATTORNEYS AT LAW—*their authority and duty.* An attorney's duty does not cease upon the recovery of a judgment on a claim which is put in his hands for collection ; he should collect the money after the judgment is recovered, unless it is otherwise agreed between him and his client.

2. And where, in the process of collecting, land is sold under an execution which issued upon such judgment, it is the duty of the attorney to receive the money which may be paid to the sheriff in redemption from such sale.

3. The collection of money is a part of the professional business of an attorney at law.

4. ATTORNEYS—*partners—dissolution—liability.* So, where a claim was placed in the hands of two attorneys, who were partners in the practice of law, for collection, a judgment was obtained, land of the debtor sold under execution, and redemption from the sale by paying the money to the sheriff, who paid it over to one of the attorneys. Prior to the redemption, the law co-partnership between the attorneys was dissolved, yet both of the partners were held liable to the client for the money thus received by one of them after the dissolution.

5. Where a party retains two attorneys who are partners, he is entitled to the services of both until the business in which they are retained, shall be completed, notwithstanding a dissolution of their co-partnership in the meantime.

WRIT OF ERROR to the Superior Court of Chicago; the Hon. GRANT GOODRICH, Judge, presiding.

This was an action of assumpsit instituted in the court below by Bernhard Smyth, Felix E. O'Rourke and William A. Herring, who resided in the city of New York, against Andrew Harvie and Murray F. Tuley, to recover a certain sum of money which the defendants, as attorneys at law, had collected for the plaintiffs, and failed to pay over.

It appears that the plaintiffs below had retained Harvie & Tuley, who were, at the time, copartners in the practice of law, in the city of Chicago, to collect a debt which they had against one Charles McDonnell. The attorneys, not being able to collect the money otherwise, instituted suit against McDonnell, and recovered a judgment for the amount of the debt. A part of the money was collected upon execution, and paid over by the attorneys to their clients. Finally, for the residue, they procured a levy to be made upon the real estate of McDonnell, a sale was had, and the attorneys bid in the land, and received a certificate of purchase from the sheriff, in the names of their clients. Before the expiration of the time of redemption, McDonnell redeemed the land from such sale, by paying the money into the hands of the sheriff. Soon after the redemption was made, Harvie presented the certificate of purchase to the sheriff, received the money paid upon the redemption, and receipted therefor in the name of the firm of Harvie & Tuley.

Prior to the receipt of this redemption money by Harvie, the law firm of Harvie & Tuley was dissolved; Tuley going out, and leaving all papers and business with Harvie.

Now Tuley insists, that inasmuch as the copartnership between himself and Harvie was dissolved before Harvie received this money, Harvie alone is responsible for it to their clients; and such was the ruling in the court below, in which a judgment was rendered accordingly.

The plaintiffs below sued out this writ of error, and question the correctness of the ruling of the court below in regard to Tuley's liability.

Messrs. Hurd & Booth, for the plaintiffs in error, relied upon the following points and authorities.

1. "The contract of retainer was a joint and continuing contract, and neither of the parties could be released from its obligations or responsibilities which they had thereby assumed, either by a dissolution of the firm, or by any other act or agreement between themselves. A dissolution does not affect engagements already made, at least so far as their clients are concerned." *Walker* v. *Goodrich*, 16 Ill. 341.

The undertaking of a firm of attorneys to collect, is like that of a firm of common carriers to transport goods, etc. *Poole* v. *Gist*, 4 McCord, 259.

Messrs. Barker & Tuley, for the defendants in error.

1. The original retainer as attorneys gave Harvie no authority to receive the redemption money.

Authority of an attorney is twofold—expressed in the warrant, or implied by law. Co. Litt. 52.

The rule is, that the power of an attorney, under his general warrant, expires when judgment is rendered, for thereby, says Lord Coke, *placitum terminatur.* 2 Inst. 378.

The defendant is out of court by the judgment, for the warrant of attorney is " *quousque placitum terminatur*," the defendant's *placitum* is determined by the judgment. 1 Moore & Payne, 513, 514, (17 E. C. L. 193) ; 4 Bingham, S. C. 578 ; 1 Hill, 659, 660.

Previous to judgment, there must be an order of substitution to change attorneys, (1 Wendell, 293) ; but after judgment, plaintiff may have his execution issued by any attorney without substitution. 5 Cow. 446.

The general rule is, that power and authority of attorney, by virtue of his retainer, ceases with final judgment. 8 Johns. 361 ; 1 Hill, 656.

The following cases should be decisive of this one :

An attorney cannot, under his general authority, purchase land under execution in the cause for the benefit of his client. 11 Johns. 464 ; 14 Vesey, Jr. 517.

He must have express authority so to do. 4 Cowen, 738.

Attorney cannot receive securities to collect and apply on judgment; cannot receive bond in discharge of judgment. 13 Mass. 320 ; 5 Rand. 639.

By stipulation, attorney agreed to receive (did receive) deed for land in satisfaction of judgment; *held,* he had no power. 14 Serg. & R. 307.

An attorney may receive money upon execution, but is not bound to do so. 4 McCord, 259.

After judgment, the attorney can only issue execution; cannot enter satisfaction without payment; release the damages; discharge the defendant from execution without payment; can take nothing but money in satisfaction, and the assignment by creditor cuts off all control of attorney over judgment. 1 Desau. 469 ; 27 Ill. 151 ; 16 Ill. 272 ; 10 Ala. 231 ; 11 Adol. & Ellis, 829, S. C. ; 2 Exchequer, 489 ; 3 Barn. & Adol. 366.

2. In the case of purchase of land, under an execution sale, the judgment is actually satisfied. There is no longer any judgment for attorneys to control.

" An agent employed to make, negotiate or conclude a contract, is not, as of course, to be treated as having an incidental authority to receive payments which may become due under such contract." Story on Agency, sec. 98, and cases cited.

· This certificate of redemption was a negotiable instrument; and, as to negotiable instruments, it is held that payment can only be made to the party in whom the legal title stands. In other words, if note payable to A., that A. himself must appear and claim payment. 8 Barn. & C. 622 ; 3 Man. & R. 58 ; 3 Younge & C. 220.

Harvie did not have the legal title to this certificate, (it was not indorsed,) and he could not receive the money except he was specially authorized. Edwards on Bills, p. 537.

Messrs. HURD & BOOTH, for the plaintiffs in error, in reply.

It is conceded that there is a class of cases in which the

courts have held that the authority of an attorney over a suit, ends with the judgment and execution.

The following authorities take a more liberal view of the powers and duties of attorneys, and fully sustain the position we assume, that both their authority and duty extend beyond the execution, if further steps are required to collect the debt. *Cranberry* v. *The Commonwealth*, 1 Dana, 272; *Nolan* v. *Jackson*, 16 Ill. 272; *McCarrier* v. *Neely*, 1 Greene (Iowa) R. 360; 1 Call, 127; *Dearborn* v. *Dearborn*, 15 Mass. 316; *Stewart* v. *Biddecom*, 2 Comstock, 106; *Crocker* v. *Hutchinson*, 1 Vermont, 73; *Hopkins* v. *Willard*, 14 Vermont, 474; *Bracket* v. *Norton*, 4 Conn. 517.

Mr. JUSTICE WALKER delivered the opinion of the Court.

The plaintiffs in error retained defendants in error to institute a suit against McDonnell. A judgment was recovered, an execution was issued, real estate was sold, and purchased for four hundred dollars, and a certificate of purchase was taken in the names of plaintiffs in error. Afterwards McDonnell redeemed the land from this sale, paying into the hands of the sheriff, for the purpose, four hundred and forty dollars. On the 19th day of February, 1857, defendant Harvie took the certificate of purchase to the sheriff, obtained the money, and receipted for it in the name of the firm. It seems, that this money was never paid to plaintiffs in error, and this action was brought for its recovery, together with one hundred and twenty-eight dollars and fifty-four cents received at a different time.

Defendant Tuley relies upon a dissolution of the partnership between himself and Harvie, previous to the receipt of this redemption money, as a defense to that portion of plaintiffs' claim. This was allowed by the court below, in which a judgment was rendered for forty-four dollars and twenty-five cents, the balance of the $128.54, and interest, after deducting defendants' fee for services in collecting the money.

Whilst by the rules of the ancient common law, it was no part of an attorney's duty to receive money on a judgment, yet in more modern times attorneys have become collecting

agents, as well as lawyers. By uniform custom and practice, attorneys engage in, and attend to the collection of money as a part of their professional duty. Such is inseparable from the practice at the present day. It is not reasonable to suppose, that either party imagined, at the time of this retainer, that the duty of the defendants ceased when they obtained the judgment on the plaintiffs' claim. And the sum charged for professional services, no doubt was designed to cover the collection of the money, as well as the recovery of the judgment. In fact the evidence of the value of their services, refers to all they did in the case. They thus recognize their undertaking as collecting agents.

Then, if their partnership embraced the business of collecting money, as well as the practice of the law in other branches of the profession, it became a part of their duty to collect the money after judgment was recovered, unless otherwise agreed. If this was a partnership duty, it continued with each member, after the dissolution of the firm. Plaintiffs gave credit to the firm as it was then constituted, and they did not release themselves from their obligation, by its dissolution. For aught we know, the fact that Tuley was a partner, may have been the inducement to confide the business to the care of the firm.

Even if a dissolution of the partnership could have released the members from liability for a failure to complete the business, it could only have been after notice of the dissolution. In the absence of such notice, plaintiffs had no option in determining whether they would continue the cause in the hands of the member who took charge of the business of the firm, or would place it in the hands of another attorney. It cannot be, that their business can be transferred to others without their consent, so as to escape responsibility. They did not trust either member of the firm separately, but it was to both that the business was entrusted, and they have the right to look to both for its faithful performance. The court below erred in finding, that Tuley was released from liability by the dissolution of the partnership, and the judgment must be reversed, and the cause remanded.

*Judgment reversed.*